Glen M. HUGHES, Plaintiff,

v.

UNIFIED SCHOOL DISTRICT # 330,
WABAUNSEE COUNTY,
KANSAS, Defendant.

No. 94–4002–SAC.

United States District Court,
D. Kansas.

Dec. 23, 1994.

Wesley A. Weathers, Weathers & Riley, Topeka, KS, for plaintiff.

Robert D. Hecht, Scott, Quinlan & Hecht, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

CROW, District Judge.

This civil rights case comes before the court on the defendant's motion for attorney's fees pursuant to 42 U.S.C. § 1988. The issue presented is whether the defendant is a prevailing party entitled to recover attorney's fees when the plaintiff voluntarily dismisses his case with prejudice prior to any judicial determination on the merits.

The plaintiff, Glenn M. Hughes, is the former superintendent of the defendant school district. The school board terminated the plaintiff with more than one year left on his written contract of employment. The plaintiff filed suit alleging the defendant had violated his rights to procedural due process. The plaintiff specifically claimed that the defendant had not afforded him a "pre-termination hearing," "a post termination hearing before an impartial decision maker," and an "opportunity to confront and cross-examine those" persons providing information against him. (Dk. 1 at 2). The defendant also alleged that the defendant's decision was not based on substantial, competent evidence. (Dk. 1 at 2).

After receiving the defendant's answer, the court ordered a scheduling conference for March 16, 1994. (Dk. 5). Because of continuances, the court did not enter a scheduling

order until April 14, 1994. (Dk. 13). The week before the defendant had served the plaintiff with requests for admissions. (Dk. 12). The plaintiff responded to these requests on May 3, 1994. (Dk. 14). This is the only formal discovery completed prior to the plaintiff's voluntary dismissal.

On May 27, 1994, the defendant filed notices to take the depositions of Ms. Megan Knapp on June 16, 1994, and of the plaintiff on June 17, 1994. (Dk. 16 and 17). The plaintiff filed on June 13, 1994, his motion for voluntarily dismissal of this case with prejudice. (Dk. 20). The plaintiff also filed on the same day a motion for protective order to postpone the depositions scheduled for June 16 and 17, 1994. (Dk. 19). The court granted the plaintiff's motion for protective order, (Dk. 24), and the plaintiff's motion for voluntary dismissal with prejudice (Dk. 26).

The defendant subsequently filed a motion for attorney's fees under Rule 11 of the Federal Rules of Civil Procedure and 42 U.S.C. § 1988. (Dk. 25). The court then conducted a telephone conference and raised certain questions and issues with regards to the current version of Rule 11, in particular the "safe harbor" provision. The defendant later amended its motion dropping Rule 11 as one of the asserted bases for a fee award. (Dk. 29). Before they filed their respective briefs, the court alerted the parties to the recent case of *Marquart v. Lodge 837*, 26 F.3d 842 (8th Cir.1994), and asked them to address it. The defendant discussed *Marquart* in a separate 10–page memorandum (Dk. 30) and in its later 152–page general memorandum on fees (Dk. 32). The plaintiff limited his discussion of *Marquart* to his 59–page memorandum of opposition. (Dk. 38).

## LEGAL STANDARD FOR AWARDING ATTORNEY'S FEES

■ In any action to enforce 42 U.S.C. § 1983, the district "court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). This statute does not distinguish between plaintiffs or defendants, nor does it

provide the circumstances entitling a party to recover fees. The courts have supplied those circumstances and drawn a distinction between plaintiffs and defendants. *See Cobb v. Saturn Land Co., Inc.*, 966 F.2d 1334, 1338 (10th Cir.1992). A prevailing plaintiff may recover attorney's fees "in all but special circumstances," but a prevailing defendant may recover fees only when the plaintiff's action "'is found to be unreasonable, frivolous, meritless or vexatious.'" *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 417, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (quoting *Carrion v. Yeshiva University* 535 F.2d 722, 727 (2nd Cir.1976)).[1]

The reasons for the distinction between the parties are fundamental. Congress chose § 1983 plaintiffs as the vehicle for vindicating an important public policy and gave the plaintiffs an incentive to sue, namely, recoverable attorney's fees under § 1988. *Rounseville v. Zahl*, 13 F.3d 625, 632 (2nd Cir.1994); *see Christiansburg Garment*, 434 U.S. at 419, 98 S.Ct. at 699. This incentive for bringing meritorious litigation would be substantially undercut if § 1983 plaintiffs risked assessment of defendants' attorneys' fees "simply because they do not finally prevail." *Christiansburg Garment*, 434 U.S. at 422, 98 S.Ct. at 701; *See Rounseville v. Zahl*, 13 F.3d at 632 ("Concerned about the potential chilling effect … we are hesitant to award attorney's fees to victorious defendants in section 1983 actions."). Without this distinction, one could lose sight of the fact that a prevailing plaintiff's fees are paid by a defeated civil rights violator and a prevailing defendant's fees are paid by a defeated civil rights claimant. It is for these reasons that a prevailing plaintiff recovers attorney's fees under almost all circumstances while a prevailing defendant recovers fees only in very narrow circumstances.

■ Requests for attorney's fees submit to a sequential analysis. At the outset, the court determines if the party seeking fees is a plaintiff or defendant. *United States v. State of Mississippi*, 921 F.2d 604, 609 (5th

---

**1.** The Supreme Court in *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 177–78, 66 L.Ed.2d 163 (1980), held that the same standard enunci- ated in *Christiansburg*, a Title VII case, governs the award of attorney's fees under § 1988.

Cir.1991). The court next considers whether the movant is a prevailing party. *See, e.g., Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *cf. Griffith v. State of Colo., Div. of Youth Services,* 17 F.3d 1323, 1328 (10th Cir.1994). Finally, the court in the exercise of its discretion decides whether the prevailing party is entitled to a reasonable fee award. *See Farrar v. Hobby,* —— U.S. at ——, 113 S.Ct. at 573–74, 121 L.Ed.2d at 503–04; *Marquart v. Lodge 837,* 26 F.3d 842, 853 (8th Cir.1994). The first step here is not an issue, for the movant school district is plainly the defendant. The second step, however, is a significant issue.

When does a party prevail? "Congress intended to permit the ... award of counsel fees only when a party has prevailed on the merits." *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam). In *Farrar v. Hobby,* the Supreme Court synthesized three earlier decisions [2] on when a plaintiff prevails and qualifies for attorney's fees. —— U.S. at ——–––––––, 113 S.Ct. at 572–73, 121 L.Ed.2d at 502–03. The Court concluded:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, (citation omitted), or comparable relief through a consent decree or settlement, (citation omitted). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. (Citation omitted). Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." (Citation omitted). Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. (Citation omitted). In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying

the defendant's behavior in a way that directly benefits the plaintiff.

—— U.S. at ——, 113 S.Ct. at 573, 121 L.Ed.2d at 503. Under such a test, the defendant school district here technically would be a prevailing party. On the plaintiff's motion, the court dismissed his suit with prejudice and materially altered the legal relationship between the plaintiff and the school district. The plaintiff did not obtain any relief on his claims and is now barred from asserting these same claims against the defendant school district. Both circumstances directly benefit the school district. The defendant school district relies on this mechanical application of *Farrar,* but the plaintiff advocates a different rule for determining when a defendant prevails.

Does a defendant prevail when the plaintiff voluntarily dismisses the action with prejudice? Case law on this question is scant. For purposes of awarding costs under Rule 54, the defendant generally is not viewed as a prevailing party when the plaintiff voluntarily dismisses with prejudice. *Nemeroff v. Abelson,* 620 F.2d 339, 350 (2nd Cir.1980) (citing *Mobile Power Enterprises, Inc. v. Power Vac, Inc.,* 496 F.2d 1311, 1312 (10th Cir.1974); *see generally 6 Moore's Federal Practice* ¶ 54.70[4] (2d ed. 1976)); *But see Schwarz v. Folloder,* 767 F.2d 125, 130–31 (5th Cir.1985).

As for attorney's fee awards, the Eighth Circuit in *Marquart v. Lodge 837* offers a logical framework for analyzing voluntary dismissals. The pro se plaintiff in that case dismissed with prejudice her Title VII complaint four days before trial. The district court awarded attorney's fees to the defendant, and circuit court reversed this award on a finding that the defendant was not a prevailing party under Title VII. The Eighth Circuit appears to be the only federal appellate court to have struggled recently with a definition for "prevailing defendant." For that reason, the court will take the time to lay out the more important conclusions in *Marquart v. Lodge 837* and the reasoning behind them.

**2.** *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam); and *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

The Eighth Circuit rejected the *Farrar* "material alteration of the legal relationship among the parties" language as a common definition of prevailing party for both plaintiffs and defendants. 26 F.3d at 850–51. The court construed *Farrar* as setting "the extreme contours of what constitutes a prevailing civil rights plaintiff for purposes of fee-shifting. These contours are meant to be extreme because, under the broad, policy-oriented, *Christiansburg* definition, a prevailing plaintiff is entitled to attorneys' fees except under very special circumstances." 26 F.3d at 850. With such a broad definition of a prevailing plaintiff, the courts have the latitude, as observed by the Eighth Circuit, to reward the plaintiffs for their service as private attorneys general. *Id.* at 851. The Eighth Circuit considered *Farrar* and the three cases discussed therein to be the Supreme Court's chances to adopt a general definition of prevailing party. Because the Supreme Court passed each time, the Eighth Circuit reasoned that the Court in each instance was only defining a prevailing plaintiff. 26 F.3d at 851. Therefore, the *Marquart* panel concluded that the *Farrar* definition of prevailing plaintiff could not be transformed into a general definition of prevailing party. 26 F.3d at 851.

The Eighth Circuit then reviewed its decisions where attorney's fees were awarded to prevailing defendants. 26 F.3d at 851. From its review, the panel concluded:

> Where there are disputed issues of fact, it is necessarily impossible to prove that a plaintiff's case is meritless shy of a full-blown trial on the merits which might reveal that the plaintiff's case was "without foundation." Where there are no disputed issues of fact, and where the defendant has moved the court for summary judgment as a matter of law, however, the defendant may also be able to prove that a plaintiff's claim was frivolous, unreasonable, or groundless.

26 F.3d at 852. In light of the *Christiansburg* test, the *Marquart* panel found that a defendant cannot prove the plaintiff's case to be frivolous, unreasonable or groundless without a judicial determination of the case on its merits. *Id.* at 852. Such a determination is not possible unless the merits of the case have been tried or the subject of dispositive motion. *Id.*

 The Eighth Circuit applied its conclusions, as follows:

> In this case, Marquart voluntarily withdrew her complaint with prejudice prior to a judicial determination on the merits. We emphasize that there is not a scintilla of evidence that Marquart voluntarily withdrew her complaint to escape a disfavorable judicial determination on the merits. So far as appears, Marquart's decision to withdraw her complaint voluntarily was a matter of litigation strategy. It is often very difficult to prove hostile work environment cases. The decision to withdraw a complaint with prejudice and to pursue state law claims instead is a legitimate litigation strategy. Marquart "should not be penalized for doing precisely what [s]he should have done. To award attorney's fees under these facts would undermine the direction of Congress that private Title VII plaintiffs are the chosen instrument for the enforcement of the civil rights laws.... The court would create a disincentive to the enforcement of civil rights laws if Title VII plaintiffs were required to risk attorney's fees upon discovery that [the case] posed insurmountable problems of proof." *Westmoreland v. J.I. Case Co.,* 714 F.Supp. 397, 398 (E.D.Wis.1989).
> . . . .
> In summary, we will grant prevailing party status to a Title VII defendant only in very narrow circumstances. To obtain prevailing party status, a defendant must be able to point to a judicial declaration to its benefit. This might be an order granting a defendant's motion for summary judgment on the merits.

26 F.3d at 852. In short, a defendant is not a prevailing party, according to *Marquart,* unless it has benefitted from a judicial determination going to the merits of the case. An order dismissing a case with prejudice is not such an order, if it simply grants the plaintiff's motion to dismiss that was filed before a judicial determination on the merits. 26 F.3d at 852. The *Marquart* opinion, however, suggests that a court should consider

whether the plaintiff moved to dismiss only to avoid an expected, unfavorable judicial decision on the merits. *Id.* Presumably, the Eighth Circuit would recognize an exception where a defendant can be a prevailing party upon proof that the plaintiff dismissed his suit to avoid an adverse judicial decision on the merits.

Another possible approach is that represented by *Fernandez v. Southside Hosp.*, 593 F.Supp. 840, 843–44 (E.D.N.Y.1984), which recognizes that a defendant may be a prevailing party when the plaintiff voluntarily dismisses. The court there said:

> As evidenced from the above discussion, the law is far from clear or settled in this largely untraveled area. Certainly, it cannot be said that a defendant *always* prevails when a plaintiff voluntarily dismisses his lawsuit without prejudice. It would be incorrect and illogical, however, to hold that a defendant never prevails upon such a voluntary dismissal. The answer, we believe, lies in examining the circumstances surrounding the voluntary dismissal. For example, where the complaint is clearly frivolous or there have been proceedings on the merits or substantial discovery, defendants have a stronger argument that they prevail when plaintiff voluntarily discontinues suit. On the other hand, where it has not been shown that the complaint is frivolous and there have been no proceedings on the merits nor substantial pre-trial proceedings, the argument must necessarily be less persuasive.
>
> . . . .
>
> The House Report on § 1988, states that: "A prevailing defendant may also recover its fees when the plaintiff seeks and obtains a voluntary dismissal of a *groundless* complaint. . . ."

H.Rep. No. 94–1558, 94th Cong., 2d Sess. 7–8 (1976) (emphasis added).

Clearly then, while Congress intended that a party, even a defendant, might prevail in the absence of formally obtaining relief, as where the plaintiff voluntarily discontinues suit, it is necessary that such a defendant vindicate rights or establish clearly the groundlessness of plaintiff's complaint. We find no indication that Congress intended to include within the term "prevailing parties", as used in 42 U.S.C. § 1988, a defendant who formally obtains no relief while neither vindicating rights nor establishing the groundlessness of the plaintiff's complaint.

593 F.Supp. at 843. If this approach were used in this instance and the defendant school district could prove the plaintiff's complaint is frivolous, then the defendant would be a prevailing party and necessarily entitled to fees. As shown here, this approach bypasses the prevailing party step and makes the merit step controlling of both.

Of the two approaches, this court prefers the Eighth Circuit's. It assures separate, meaningful treatment of the prevailing party and the merit steps. It furthers the same policy reasons given by the Supreme Court for distinguishing between plaintiffs and defendants under § 1988. It limits the need for mini-trials, if not full-blown trials, on the merits of the lawsuit whenever a plaintiff chooses to dismiss the case. It gives defendants the incentive to act promptly in seeking dispositive relief when the legal issues are controlling or when there are no genuine issues of material fact. It still encourages plaintiffs to dismiss promptly those cases plagued with proof problems. Finally, it keeps defendants from retaliating against plaintiffs or deterring other plaintiffs with the prospect of costly, protracted fee litigation.

The Eighth Circuit's approach would appear to accommodate most instances when courts have found the defendant to be a prevailing party after the plaintiff's voluntary dismissal. In *Interstate Underwriting Agencies, Inc. v. Gunter*, 624 F.Supp. 774, 775 (S.D.Fla.1985), the plaintiffs voluntarily dismissed their case before the federal district could formally abstain. Because the plaintiffs already had heard the district court clearly express its views on abstention at the injunction hearing, the plaintiffs dismissed in anticipation of an adverse judicial ruling on the merits. *Gunter* is an example of where the plaintiff dismisses the case to avoid an adverse judicial determination. In *McGregor v. County Com'rs for Palm Beach County*, 130 F.R.D. 464 (S.D.Fla.1990), *aff'd*, 956 F.2d

1017 (11th Cir.1992), the plaintiff dismissed his suit five days before the scheduled trial. The court said that an award of attorney's fees pursuant to § 1988 was appropriate on the one count of the plaintiff's complaint that had been dismissed as legally insufficient. As for the others, "[t]he court never determined the factual sufficiency of . . . [them] as there was no trial or Rule 56 motion. Therefore, this court cannot award attorney's fees pursuant to . section 1988 for the plaintiff's assertion of [them]. . . ." 130 F.R.D. at 467. This quoted language is entirely consistent with *Marquart's* definition of prevailing defendant. Lastly, in *Colombrito v. Kelly,* 764 F.2d 122, 130 (2nd Cir.1985),[3] the district court had granted a directed verdict on the plaintiff's § 1983 claim after the plaintiff rested, and the plaintiff moved to dismiss during the defendants' case. Consequently, the defendant was a prevailing party by virtue of this prior judicial determination on the merits.

The defendant curiously argues the court should limit the *Marquart*[4] opinion to its facts, because the Eighth Circuit panel failed to address the earlier case of *United States for Heydt v. Citizens State Bank,* 668 F.2d 444 (8th Cir.1982). Missing from the defendant's argument is any authority for the sweeping proposition that a current judicial decision must be limited to its facts whenever it fails to distinguish, overrule, or reconcile related precedent. Though such a rule would encourage thorough judicial research and detailed opinions, it also would unduly burden the courts and leave many precedent open to doubt. Even if this were the rule, the discussion of § 1988 in *Heydt* is dictum, at best, for the court considered the Equal

Access to Justice Act, 28 U.S.C. § 2412, to be the applicable statute for awarding attorney's fees.

The defendant attacks *Marquart's* narrow definition of prevailing defendant as contrary to the legislative history of § 1988. As quoted in the above language taken from *Fernandez,* Congress contemplated a fee award to "[a] prevailing defendant . . . when the plaintiff seeks and obtains a voluntary dismissal of a *groundless* complaint." 593 F.Supp. at 843 (quoting H.Rep. No. 94–1558, 94th Cong., 2d Sess. 7–8 (1976) (emphasis added)). The defendant reads too much from this legislative history. It does not say that a defendant prevails by reason of the plaintiff's voluntary dismissal of a complaint. In fact, it does not express what circumstance qualifies the defendant as a prevailing party. For this reason, *Marquart* does not contradict § 1988's legislative history. Moreover, *Marquart* is consistent with that history in that it would recognize a **prevailing** defendant's right to recover attorney's fees when the plaintiff voluntary dismisses a groundless complaint.

## ANALYSIS

### 1. Prevailing Party

 Employing the definition of prevailing defendant adopted in *Marquart,* the court concludes that the defendant school district is not a prevailing party. It is unable to point to any judicial declaration to its benefit. The defendant had not filed any dispositive motion, and the court had not addressed the merits to any of the plaintiff's claims. There is not any evidence to indicate that the plaintiff voluntarily dismissed his complaint to avoid an adverse judicial determination on the merits.[5] The defendant

---

**3.** The Second Circuit in the published *Colombrito* opinion does not explore the prevailing party issue. On a prior appeal of the same case, the appellate court had dismissed the plaintiff's case and had included language indicating that the defendants would be considered prevailing defendants. 764 F.2d at 129–30.

**4.** One fact of importance to the defendant is that the plaintiff in *Marquart* was pro se. This court finds no significance to this fact. The Eighth Circuit arrived at its definition for prevailing defendant without mentioning or relying on the plaintiff's pro se status.

**5.** The defendant contends the dismissal was to keep defendant from deposing Megan Knapp, a principal at Dover Elementary School, about certain rumors involving the plaintiff and her. Speculation about this motive is irrelevant. This motive does not qualify as seeking "to escape a disfavorable judicial determination on the merits." *Marquart,* 26 F.3d at 852. From its reading of the entire record, the court agrees with the plaintiff that whatever Megan Knapp had to say was probably not relevant to the plaintiff's procedural due process claims. Rumors regarding Knapp and the plaintiff do not bear upon such issues as the adequacy of notice, an opportunity to cross-examine witnesses, a fair and impartial

school district is not a prevailing party for purposes of § 1988.

## 2. Merits of the Claims

Though unnecessary after the above finding, the court will discuss briefly its analysis of whether the defendant proved by a preponderance of evidence that the plaintiff's complaint was frivolous, unreasonable or groundless.·

■ When the prevailing party is a defendant, it must clear stringent standards to recover its fees:

> In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.... Decisive facts may not emerge until discovery or trial.... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
>
> ... Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

*Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. at 421–22, 98 S.Ct. at 700–01; *see Figures v. Board of Public Utilities*, 967 F.2d 357, 252 (10th Cir.1992). These standards are meant to deter the filing of frivolous lawsuits without discouraging the plaintiffs from pursuing meritorious ones. *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir.1985).

■ In deciding if the plaintiff's claims are frivolous, unreasonable, or groundless, the court must examine their merits. *Crabtree by and through Crabtree v. Muchmore* 904 F.2d 1475, 1478 (10th Cir.1990). This inquiry is the same as that used in deciding if sanctions should be imposed under Rule 11 of the Federal Rules of Civil Procedure. *Id.*

The plaintiff's suit was based on denial of procedural due process. The plaintiff's contract with the school district provided that "[t]he Board shall not terminate this contract without cause, that is unless the Superintendent shall have failed to perform his duties to reasonable (professional) standards and subject to the restrictions of state law." On November 9, 1993, the defendant's school board had delivered to the plaintiff a five-page "Notice of Intent to Consider Termination of Glen M. Hughes, the Superintendent of U.S.D. 330." The Notice listed ten reasons that the Board would consider on November 29, 1993.

On November 11 and 16, 1993, the Board's attorney took statements from nineteen witnesses under oath and before a court reporter. The statements were taken by prior arrangement without the plaintiff or his counsel being present. The nineteen witnesses included four current school board members, a former school board member, six teachers, and eight patrons. Each was asked questions regarding their personal experiences with the plaintiff and their personal assessment of the plaintiff's performance in

decisionmaker, or the adequacy of the evidence presented. Assuming for the sake of argument that the plaintiff dismissed his suit to prevent Knapp's deposition, this motive seems an appropriate and legitimate reason for dismissal. The risks of litigation are not just financial, and a plaintiff should not be penalized for filing suit without anticipating matters of possible embarrassment to him and others. Considering that the defendant noticed Knapp's deposition as one of the first two depositions to be taken and that Knapp's testimony probably was not relevant to his claims, the plaintiff could have reasonably inferred that the defendant wanted the plaintiff to consider this embarrassment factor and dismiss his suit before investing much time and money in prosecuting it. Under these circumstances, the defendant has no basis for arguing that the plaintiff dismissed to avoid an adverse judicial determination on the merits.

office. The witnesses also testified to rumors and hearsay about the plaintiff. All of the witnesses indicated their opposition to the plaintiff.

Prior to the hearing, the plaintiff's counsel made clear that his client would be challenging the Board's proposed action and would be asserting all of his due process rights, including the right to cross-examine the Board's witnesses. The plaintiff's counsel further asserted that the notice was inadequate and that certain Board members could not be fair and impartial in light of recent events. The plaintiff's counsel also asked for clarification on whether the proceeding scheduled for November 29, 1993, was the only hearing being given or whether a post-termination hearing would follow.

The Board's attorney clarified that the only hearing being offered was the one scheduled. The Board's attorney furnished at cost a copy of the transcripts of the witnesses' statements. The Board's attorney also reminded the plaintiff's counsel that the board would arrange for the attendance of any district employee who the plaintiff wanted to call as a witness. The plaintiff's counsel wrote back that he expected all of the Board's witnesses to testify in person and to be available for cross-examination. On the day of the hearing, the Board's attorney wrote the plaintiff's counsel reiterating that he would present only the transcripts and not call any witnesses live. He also wrote that it was unlikely any board member would recuse.

At the hearing, the Board's attorney disclosed that three days before the hearing each board member had been provided a copy of the approximately 450 transcribed pages of witnesses' statements. The plaintiff's counsel challenged the impartiality of the Board members and was refused the right to question the board members about their impartiality. The plaintiff's counsel objected to the Board presenting its case through written transcripts and depriving him the right to confront and cross-examine those same witnesses. After making a full record of his objections to the propriety and adequacy of the due process hearing provided him, the plaintiff withdrew from the hear-

ing after the Board's attorney introduced the written transcripts. The Board then voted to terminate the plaintiff.

The plaintiff concedes that this procedure may have sufficed for a pretermination hearing but that the law requires a full evidentiary hearing as the post-termination procedure. The defendant, however, plainly indicated to the plaintiff that this initial procedure was the only hearing it would provide the plaintiff. Unwilling to risk a waiver of the procedural and substantive defects with this procedure, the plaintiff did not participate in this hearing and his contract was terminated.

 Though his claims presented a substantial burden of proof and difficult legal hurdles, the plaintiff's position was not so utterly lacking in factual or legal support as to be frivolous, unreasonable or groundless. It is undisputed that the plaintiff had a property interest by virtue of his contract of employment. Once it is determined that the Due Process Clause applies, what process is due is not determined by state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985). The defendant relies on *Loudermill* in arguing that the plaintiff was afforded due process. The plaintiff counters that the defendant's legal arguments are the result of an improper conflation of the pretermination hearing requirements and the post-termination hearing requirements.

 In *Loudermill*, the Court held that due process required a pretermination hearing before a public employee could be terminated. 470 U.S. at 545, 105 S.Ct. at 1495. So long as the employee is given a full post-termination hearing, the pretermination hearing is sufficient if it provides notice of the employer's charges, an explanation of the employer's evidence, and an opportunity to tell the employee's side. *Id.* at 545–46, 105 S.Ct. at 1495. The pretermination hearing is not an elaborate procedure; it serves merely as "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Louder-*

*mill,* 470 U.S. at 545–46, 105 S.Ct. at 1495. In contrast, "[b]ecause the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point." *Powell v. Mikulecky,* 891 F.2d 1454, 1458 (10th Cir.1989). "Under *Loudermill,* the adequacy of pre-termination procedures must be examined in light of available post-termination procedures." *Langley v. Adams County, Colo.,* 987 F.2d 1473, 1480 (10th Cir. 1993).

The plaintiff's claim to a right to confront and cross-examine witnesses is not without legal support. *See Brock v. Roadway Express, Inc.,* 481 U.S. 252, 264, 107 S.Ct. 1740, 1748–49, 95 L.Ed.2d 239 (1987) ("In *Loudermill,* the Court considered the temporary deprivation of a state government employee's right not to be discharged without cause, indicating that the employee was entitled to ... [the three pretermination hearing requirements of notice of charges, explanation of employer's evidence, and opportunity to respond], though a full evidentiary hearing including the **right to confront and cross-examine adverse witnesses** could be delayed for a reasonable period. (citation omitted)."); *Workman v. Jordan,* 32 F.3d 475, 480 (10th Cir.1994) ("A 'full post-termination' hearing is understood to include the right to representation by an attorney and the **right to cross-examine adverse witnesses.**" (citations omitted)); *Langley v. Adams County, Colo.,* 987 F.2d at 1480 ("[I]f pre-termination hearing is limited as in *Loudermill,* post-termination hearing must include 'the right to representation by an attorney and to present evidence and **to confront and cross-examine witnesses who have made the accusations.**'" (quoting *Melton v. City of Okla. City,* 928 F.2d 920, 939 (10th Cir.) (Logan, J. dissenting), *cert. denied,* 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991)); *West v. Grand County,* 967 F.2d 362, 369 (10th Cir.1992) ("[W]hether the Due Process Clause requires that the terminated employee be offered the **right to cross-examine or confront witnesses** depends upon the significance and nature of the factual disputes at issue."); *Adams v. Sewell,* 946 F.2d 757, 765 (11th Cir.1991) ("This court has emphasized the **importance of cross-examination** in due

process analysis; post-termination proceedings have been held inadequate because a terminated employee 'had no opportunity to confront and cross-examine his accuser in the presence of the decision maker.'" (quoting *Kelly v. Smith,* 764 F.2d 1412, 1415 (11th Cir.1985)), *overruled on other grounds, McKinney v. Pate,* 20 F.3d 1550, 1558–60 (11th Cir.1994); *Pike v. Gallagher,* 829 F.Supp. 1254, 1275 (D.N.M.1993) (The Tenth Circuit consistently recognizes the right to cross-examination when the termination decision is based upon witnesses' accusations of fact.) Allegations that the plaintiff was insubordinate, violated master agreement and misapplied public funds may be serious enough to warrant the right to confront and cross-examine those who accuse him of malfeasance. There is a substantial question whether the plaintiff waived this right considering that he requested the Board to have all witnesses present in person so that he could confront and cross-examine them and the Board offered to provide only district employees. *See West,* 967 F.2d at 369–790. The court does not consider this claim to be frivolous, unreasonable, or groundless.

 The plaintiff's challenge to the impartiality of certain Board members has a legal and factual basis. One of the minimum requirements of due process protection is an impartial tribunal. *Patrick v. Miller,* 953 F.2d 1240, 1245 (10th Cir.1992). "'A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing.'" *Id.* (quoting *Miller v. City of Mission,* 705 F.2d 368, 372 (10th Cir.1983)). A person claiming bias on the part of the administrative tribunal must defeat "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712 (1975). The Supreme Court later said:

Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. (citations omitted). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing

that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances." (citations omitted). *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976). In *Staton v. Mayes*, 552 F.2d 908 (10th Cir.), *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977), the former school superintendent challenged his dismissal on procedural due process grounds. Applying *Hortonville*, the Tenth Circuit held that the prior "firm public statements" by one Board member for the removal of plaintiff and the admitted prior statements of two other board members showing their intention to terminate the plaintiff "reveal[ed] a tribunal not meeting the demands of due process for a hearing with fairness and the appearance of fairness." 552 F.2d at 914.

In the instant case, the board president gave the following statement before the termination hearing:

Q. Okay. Do you think Mr. Hughes has the confidence and support of the members of the Board of Education?

A. Not of five of them.

Q. And tell me what it is that makes you believe that.

A. In conversations with them we've just come to the conclusion that with Mr. Hughes we don't feel we can make satisfactory progress with the educational problems of the district. We don't think we get the straight story as far as the budget goes.... [A]nd I think between those things we've just lost confidence in his ability to lead the district. (pp. 48–49).

. . . .

Q. Are you satisfied that irrespective of whatever ability the superintendent may or may not have as a superintendent, he no longer is capable of being effective in that position in this school district?

A. Absolutely. (p. 54).

(Sworn Statement of David Bainum). Three other school board members—Stephen Mercer, Peggy Beasterfeld, and Keith Cheuvront—also gave sworn statements expressing their opinions of lost confidence in the plaintiff and conclusions that the plaintiff could no longer work effectively with the Board or the patrons of the school district. All four board members voted in favor of plaintiff's termination. The sworn statements by these four Board members are not such a far stretch from the prior statement made by the Board members in *Staton*. The plaintiff's claim of a partial tribunal is not so lacking in factual or legal support as to be frivolous, unreasonable or groundless. Moreover, there is a substantial question whether the plaintiff waived his right to an impartial decisionmaker considering that he refused to proceed before the Board because of its failure to entertain and rule upon his objection to its partiality. *See West*, 967 F.2d at 370.

Finally, the defendant has not carried its burden of showing the plaintiff's claims are frivolous, because the plaintiff waived his right to due process by not participating in the hearing under protest. None of the cases cited by the defendant involve circumstances resembling the instant case. The plaintiff here appeared before the administrative tribunal, objected to the procedures as constitutionally deficient, and refused to participate in the allegedly defective proceeding only after the tribunal failed to correct the noted deficiencies. The defendant does not provide any legal authority showing that a plaintiff waives those constitutional objections by not participating fully in the hearing to its foreseeable end.

Although the plaintiff may have faced substantial opposing authority, the areas of constitutional law which he sought to explore are not without legal support. For that reason alone, the defendant is not entitled to attorney's fees under § 1988. *Vakas v. Rodriquez*, 728 F.2d 1293, 1297 (10th Cir.), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984). In addition, some of the plaintiff's claims turned on factual issues which were genuinely disputed. The defendant has not carried its burden of proving that it is a prevailing defendant entitled to attorney's fees.

The plaintiff moves to strike the defense counsel's affidavit concerning the amount of requested legal fees and the defense firm's billing records attached to it as untimely and

incomplete. (Dk. 41). Having denied the defendant's motion for attorney's fees, the court need not determine the reasonable amount of attorney's fees. The plaintiff's motion to strike, therefore, is moot.

IT IS THEREFORE ORDERED that the defendant's motion for attorney's fees (Dk. 25 and 29) is denied.

IT IS FURTHER ORDERED that the plaintiff's motion to strike (Dk. 41) is denied as moot.